THE STATEN ISLAND RAPID TRANSIT RAILROAD COMPANY, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellants.

Plaintiff was assignee of two leases, executed by defendant, of ferries between New York city and Staten Island ; it also owned a railroad which it operated in connection with said ferries. The lessees were bound simply to run their boats to the island ; they being free to choose their port of arrival and departure; they agreed to pay defendant certain percentages upon the gross receipts annually. One of the leases fixed the minimum rate of ferriage at five cents per person, the other fixed no minimum rate. Plaintiff selected St. George as the port, and charged for each passenger stopping there ten cents and the same price for passengers taking the railroad to other places, of which it allowed five cents for ferriage. The city had knowledge of this, its commissioner of accounts having investigated plaintiff's books of receipts, ascertained the division made, assented to the basis adopted and thereafter accepted the percentages founded upon that division. In an action to restrain the city from declaring the leases forfeited because of plaintiff's refusal to pay the percentage upon its entire gross receipts, *held*, that plaintiff was entitled to the relief sought ; that the fact that one sum was paid for passage over the ferry and railroad did not make the whole, ferry receipts, and plaintiff was not bound to pay the city anything on account of its railroad fares; that the reduction of ferriage to passengers taking the railroad was not violative of the leases ; that if plaintiff has made a wrong discrimination among its passengers it is a public wrong and not one to the city as lessor ; and that the only question was what have been in truth and in fact the actual ferry receipts, not what they ought to, or might have been.

(Argued December 16, 1889; decided January 14, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of March, 1889, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to have defendant permanently enjoined from carrying into execution a threat to forfeit certain leases held by plaintiff, as assignee, of a ferry between New York city and Staten Island, and deprive it of the possession of the ferry franchise and the leased premises.

The leases in question were from the foot of Whitehall street and pier one, East river, in the city of New York to Staten Island; they contained no provisions as to the port of arrival and departure from Staten Island; one of them fixed the minimum rate of ferriage for each person at five cents and the other fixed no minimum rate. The lessees covenanted to pay a certain percentage of the gross receipts and a certain amount in addition per annum. Plaintiff owned and operated a railroad on Staten Island and leased and operated another railroad there which also operated one of said ferries as lessee. Plaintiff selected St. George as its port of arrival and departure on Staten Island for both ferries and operated them in connection with the railroad it owned and the one it held as lessee. For each passenger going to St. George it charged ten cents, and for each of those taking either of its railroads it also charged ten cents, treating the ferriage as five cents, and it reckoned the percentage due the city on such fares on that basis. This was done with the knowledge of the commissioner of accounts; he investigated plaintiff's books, assented to the mode of computation adopted and accepted the percentage thus ascertained.

*D. J. Dean* for appellant. Defendants are entitled to an accounting from plaintiff of the receipts from passengers carried over the ferry. (Laws of 1887, chap. 104, § 2.) The acceptance by defendants of the percentages paid furnish no reason against such accounting. (*Palmerton* v. *Huxford*, 4 Denio, 167.) The finding of the commissioner of accounts as

to the amount due the city is not conclusive upon defendants. (Laws of 1882, chap. 410, § 110.)

*William MacFarland* for respondent. The contemporaneous and continued construction of the leases by the parties, the quarterly accountings and receipts in full for a number of years, are conclusive upon the defendant. (*United States* v. *Allison*, 91 U. S. 303; *Chicago* v. *Sheldon*, 9 Wall. 54; *C. M. Ins. Co.* v. *Sherwood*, 14 How. [U. S.] 362.)

Finch, J. Under both leases of the ferries the lessees were only bound to run their boats to Staten Island. They were free to choose their port of arrival and departure, and were at liberty to have but one. They chose to have but one, and selected St. George as that one, it being the nearest point to New York. The passengers landed there, who desired to go further, were carried by rail to points on the north and east shore. The lessees of the ferry were also the owners of the railroad. That ownership was theirs absolutely, and the lines owed no tribute to the city of New York. If, under the old system, the boats coasted both shores, no law prevented a change, and the leases imposed no obligation beyond a ferry to the island. The lessees were bound to pay certain percentages on the gross ferry receipts. They were not bound to pay upon the railroad receipts. Where one sum was paid for one passenger over the ferry and over the railroad, that did not make the whole of such sum ferry receipts. The ferry owned part, and the railroad part, and the only question possible would be one of equitable division and distribution. The lessees made such distribution. So far as we can see, it was a fair division of the total charge between the ferry on the one hand and the railroad on the other. The city had full knowledge of it. By its commissioner of accounts it investigated the books of the lessees, ascertained the division made, assented to the basis adopted, and thereafter accepted the percentages founded upon that division. But all this time, the city, it seems, was asleep, and at last woke up. Its officers knew that

the lessees charged ten cents for every passenger carried to St. George, and ten cents to his destination for every passenger who crossed the ferry and went on over the Rapid Transit lines, and insisted that the latter ten cents was, like the former, all ferriage and gross receipts of the water route. For the purpose of tribute to the city, the railroad had no fares but ran for nothing. The argument may be formulated thus: The lessees charge a passenger to St. George ten cents; that, therefore, is the rate of ferriage; if they take another passenger to St. George and then beyond on the railroad also for ten cents, the ferriage remains the same and the railroad fare is nothing. The argument assumes that the lessees carry both passengers across the water for the same price. They do not. The railroad fare, by itself, is five cents, or just half of the whole sum paid. In other words the passenger who stops at the shore pays ten cents for his ferry passage, but he who goes inland over the railroad pays five cents for his ferry passage and five more for the railroad fare. To such passengers the ferriage is reduced one-half. The leases permit it. One of them fixes no minimum rate of ferriage, and the other makes it five cents. Below that the lessees have not gone. They have a right to carry passengers for five cents across the water, and they do carry one class of them for that because they pay as much more to the railroad. The trouble is, and is only, that they charge other passengers who stop at St. George ten cents. The corporation counsel concedes that the lessees might charge all passengers alike five cents ferriage, and if it did that, the city could not and would not complain. The objection then is, at bottom, that the lessees discriminate between their passengers and charge one man twice as much as another. Is it the business of the city as lessor to redress that wrong, if it be one? Is it the general guardian of all the common-carriers within its limits? If the discrimination is wrong, it is a public wrong, and not at all one to the city in its character of lessor. Its complaint in that character strikes me at least as odd. It is, that, instead of charging five cents ferriage for every passenger and so reduc-

ing the basis of the city's revenue, it obstinately persists in charging some passengers ten cents, and so increases the city's revenue from the ferriage. Passing by the moral attitude of such a claim, its business attitude as between lessor and lessee is indefensible. If there is discrimination, the city gets the benefit of it, and cannot question what does not harm it and what its contract permits. So far as lessor and lessee are concerned, the only question is, what have been in truth and in fact the actual ferry receipts, not what they ought to have been or might have been; and so whether the ferry fare to railroad passengers has been actually reduced to five cents, or kept as to those passengers at ten cents, the rapid transit fare being nothing. The situation itself and the acts of the parties in respect to it are sufficient to settle that question as it was settled by the courts below.

The city's contention, if successful, would necessarily end in one of three things. Either all ferriage would drop to five cents, so as to leave five more for the transit line, in which case the gross receipts, and so the city's percentage, would be reduced; or the price to railroad passengers would go to fifteen cents, because the ferriage alone must be ten, and the railroad could not run for less than five, in which case the public welfare for which the city pleads would suffer; or the lessees would be obliged to pay to the city a percentage upon their railroad as well as their ferry earnings which would be clearly unjust.

We think the parties themselves settled the matter upon a fair basis and adopted a just construction.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.